**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Henrietta VILLARREAL, Defendant–Appellant.**

**No. 08CA0713.**

Colorado Court of Appeals, Div. III.

Aug. 20, 2009.

---

counsel with respect to jury instructions, or lack thereof, on attempted first degree murder, intoxication, heat of passion provocation, and unanimity in connection with second degree burglary. The very same jury instructions had been the subject of defendant's previous direct appeal.

We affirm the district court's order denying defendant's claims of ineffective assistance of counsel.

## I. Factual Background

Late one night, a female intruder entered the victim's apartment through the locked door and attacked her by hitting her, biting off a chunk of her ear, and stabbing her repeatedly with a knife in the back of the neck, lower back, chest, face, and extremities. During the assault, the intruder called the victim a slut and a whore and said she would not let the victim "take [her] man," stated she was "gonna kill" the victim, and expressed her intent to stay there until the victim died. Upon learning that the victim was expecting a visitor to arrive, the intruder changed her mind and left the victim with the telephone line cut and the apartment door shut. The victim was able to open the front door and fall outside, where her neighbors found her. She could have died from her injuries without medical attention. Instead, the attack left her permanently disfigured.

At trial, the victim testified regarding the attack and statements made by the woman who attacked her. The victim identified defendant as her assailant, having seen defendant on several occasions with the victim's former boyfriend (ex-boyfriend). Although the ex-boyfriend had told the victim that defendant was his cousin, defendant had been in a romantic relationship with the ex-boyfriend for more than ten years. The victim also testified that the ex-boyfriend told her defendant may have taken from him a duplicate of the victim's key, which the police found on the floor in the victim's apartment after the attack.

When interviewed by the police, defendant admitted she had fought with the victim at the victim's apartment on the night in ques-

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Nora V. Kelly, P.C., Nora V. Kelly, Denver, CO, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Henrietta Villarreal, appeals the district court's order denying her Crim. P. 35(c) claims of ineffective assistance of

tion. However, defendant argued at trial that the police had coerced her into making that statement, and that, due to her alcohol consumption during the day, she had not clearly recalled the events of the evening when interrogated. Defendant argued that she had been misidentified as the perpetrator of the crimes. No physical evidence connected her to the crimes, and the ex-boyfriend testified in support of an alibi defense.

## II. Procedural Posture of Defendant's Claims

The jury returned guilty verdicts of attempted first degree murder, first degree assault, first degree burglary, and three crime of violence counts. Another division of this court affirmed the convictions on direct appeal. *People v. Villarreal,* 131 P.3d 1119 (Colo.App.2005) (*Villarreal*).

### A. Claims of Instructional Error on Direct Appeal

Included among her claims on direct appeal, defendant alleged that reversal of her convictions was required

> because the trial court failed to instruct the jury (1) properly on the mens rea and actus reus elements of the crime of attempted first degree murder; (2) on voluntary intoxication; (3) on the absence of "heat of passion" provocation, as an element of or sentencing enhancement factor for first degree assault; and (4) on the need to unanimously agree on an intended criminal objective of the burglary.

*Villarreal,* 131 P.3d at 1124. Because counsel had neither objected nor presented instructions on these issues for the trial court's consideration, the *Villarreal* division reviewed defendant's claims for plain error and rejected each of them.

### 1. Attempted First Degree Murder

On direct appeal, defendant contended that the trial court erred by (1) omitting the culpable mental state elements of "intentionally" and "after deliberation" from the instruction on the elements of attempted first degree murder, and (2) allowing defendant to be convicted upon a "mere showing of 'an attempt to attempt' the offense." *Id.* at

1124–25. Although the *Villarreal* division agreed that the trial court had erred, it concluded that the trial court had not committed plain error. *Id.* at 1125.

As to the first point, the division held that plain error does not occur when, as here, the applicable culpable mental states are otherwise set forth in separate instructions on the elements of the crime the defendant is alleged to have attempted. *Id.* As to the second point, the division concluded that plain error did not occur as a result of the attempt instruction because the error did not relate to a contested issue at trial and because of the strength of the evidence related to the attack. Specifically, although defendant contested her identity as the perpetrator of the attack, she did not contest at trial "whether the conduct of the assailant was sufficient to satisfy the actus reus element of attempted first degree murder, and the evidence was otherwise overwhelming." *Id.*

### 2. Intoxication

Defendant also contended on direct appeal that, because there was evidence she had been drinking beer on the day of the attack, the trial court reversibly erred by failing to instruct the jury, sua sponte, on the defense of voluntary intoxication. *Id.* Because defendant pursued a theory of misidentification, the division concluded that the trial court had not committed plain error by failing to instruct the jury on the defense of intoxication, which was inconsistent with her theory of defense. *Id.* at 1125–26.

### 3. Heat of Passion Provocation

The *Villarreal* division likewise rejected defendant's claim that the trial court committed plain error when it did not (1) instruct the jury that the absence of "heat of passion" provocation is an element or sentence enhancer of first degree assault or (2) otherwise instruct the jury on heat of passion provocation. *Id.* at 1126–28.

As to the first point, after a thorough analysis based on principles of statutory construction and constitutional law, the division concluded that Colorado's first degree assault statute does not presume any element

of the crime and the statutory mitigating circumstance of acting upon a provoked heat of passion is distinct from and would not negate any element of first degree assault. Thus, the division held, "the prosecution need not prove, and the jury need not be instructed upon, the absence of heat of passion provocation as an element of the crime." *Id.* at 1127.

As to the second point, the division found there was no plain error because the defense of heat of passion provocation would have been inconsistent with the theory of defense and, in any event, the evidence was insufficient to warrant such an instruction in this case. Specifically, there was no evidence of an "event sufficient to provoke in a reasonable person a passion to cause serious bodily injury." *Id.* at 1128.

### 4. Unanimity

The *Villarreal* division also rejected defendant's claim that the first degree burglary conviction must be reversed because the jury was not instructed it must unanimously agree on the offense she intended to commit upon entering the victim's apartment. *Id.* at 1128–29. The division found that, because the jury unanimously found defendant guilty of two of the possible felonies underlying the burglary—attempted first degree murder and first degree assault—any error in failing to include a special unanimity instruction was harmless. *Id.*

The Colorado Supreme Court denied defendant's petition for writ of certiorari.

### B. Claims of Ineffective Assistance of Counsel in This Appeal

The same jury instructions, and the same issues and allegations of error in those jury instructions, formed the basis of defendant's Crim. P. 35(c) motion. However, in her postconviction motion, as relevant here, defendant sought relief upon allegations that the jury instructions, or lack thereof, were the result of ineffective assistance of counsel for failing to object to, or propose, the instructions at issue.

Specifically, as relevant to this appeal, defendant alleged counsel was constitutionally ineffective for failing to (1) object to the jury instruction on attempt on the basis that it (a) did not instruct the jury that defendant must have acted with intent to cause the death of another person after deliberation and (b) did not instruct the jury that it must find she took a substantial step toward commission of the offense; (2) request a jury instruction on "heat of passion" with respect to the first degree assault charge; (3) request an instruction on the "affirmative defense of intoxication"; and (4) object to the burglary instruction on the basis that it did not require the jury to unanimously agree on the offense defendant intended to commit when she entered the building.[1]

At the postconviction hearing, the district court expressed its view that the motion could be decided as a matter of law based on the file and record, including the *Villarreal* opinion, and its skepticism that the evidentiary hearing was necessary. Nonetheless, the court heard testimony from an expert witness on criminal defense. Although the expert opined that trial counsel had made errors with respect to the jury instructions, he specifically declined to offer an opinion regarding whether the outcome of the case was affected by the alleged errors. After hearing arguments of counsel, the district court denied the motion in a lengthy ruling in open court.

### III. General Legal Standards

In postconviction proceedings, the legality of the judgment and regularity of the proceedings leading to the judgment are presumed, and it is the defendant's burden to establish by a preponderance of the evidence the allegations in the postconviction motion. *Kailey v. Colo. State Dep't of Corr.,* 807 P.2d 563, 567 (Colo.1991); *see also People v. Naranjo,* 840 P.2d 319, 325 (Colo.1992) (in asserting a postconviction claim, the defendant must overcome the "presumption of validity" which attaches to the judgment). In cases,

---

1. To the extent defendant raised other claims during the postconviction proceedings, she did not pursue them, and we deem them abandoned.

*See People v. Hall,* 87 P.3d 210, 213 (Colo.App. 2003).

such as this, involving mixed questions of law and fact, we defer to the district court's findings of fact when they are supported by the record and review de novo its legal conclusions. *People v. Kyler*, 991 P.2d 810, 818 (Colo.1999).

A defendant's right to counsel is the right to effective assistance of counsel, the purpose of which is to ensure a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether a defendant has received ineffective assistance of counsel in violation of that right, we follow the test adopted in *Strickland. See Davis v. People*, 871 P.2d 769, 772 (Colo.1994).

To succeed on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases and (2) the deficient performance resulted in prejudice to the defendant. *Strickland*, 466 U.S. at 687–90, 104 S.Ct. 2052; *Davis*, 871 P.2d at 772.

To prove the first prong of the test, a defendant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance and show that, in light of all the circumstances of the case, counsel's identified acts or omissions were such that counsel's representation fell below an objective standard of reasonableness as informed by prevailing professional standards. *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052; *Davis*, 871 P.2d at 772. To prove the second prong of the test, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" in this context is a "probability sufficient to undermine confidence in the outcome" of the proceeding. *Ardolino v. People*, 69 P.3d 73, 76 (Colo.2003) (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

An ineffective assistance claim will not succeed if a defendant fails to prove either prong of the test. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *People v. Gandiaga*, 70 P.3d 523, 526 (Colo.App.2002).

## IV. Analysis

Defendant contends the district court erred in denying her postconviction motion, arguing that she had proved trial counsel's incompetence with respect to the jury instructions and that, "if the jury instructions had been handled more competently, the results of the trial would have been different." We are not persuaded.

### A. Defendant Is Not Entitled to Perpetual Review of Her Claims

Defendant's allegations are derivative of her claims on direct appeal. Although claims of ineffective assistance of trial counsel can be sufficiently distinct from the claims on direct appeal that the district court will not always be compelled to deny them under Crim. P. 35(c)(3)(VI) (subject to exceptions, court shall deny any claim raised and resolved in prior appeal or postconviction proceeding on behalf of same defendant), they are not sufficiently distinct in this case. In the claims before us, defendant alleged precisely the same instructional errors that were raised and resolved in *Villarreal* and has merely recast them under the constitutional theory of ineffective assistance of counsel. The law does not allow such perpetual review. *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo.1996) (argument raised under Crim. P. 35 that does not precisely duplicate an issue raised on appeal will be precluded if review "would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory" (quoting *People v. Bastardo*, 646 P.2d 382, 383 (Colo.1982))).

### B. The Resolution of Villarreal's Prior Appeal Precludes a Showing of Prejudice Under Strickland as to Three of Her Claims

In resolving defendant's claims of instructional error on direct appeal, the *Villarreal* division concluded that the alleged errors did not amount to the plain error required for reversal of her convictions. 131 P.3d at 1124–29. As to defendant's claims of error in the instructions on attempted first degree

murder and the absence of instructions of heat of passion provocation and unanimity, the division supported its conclusion with a determination that defendant had not suffered plain error prejudice. *Id.* Consequently, defendant cannot satisfy the prejudice prong of the *Strickland* test as to these claims.

■ Plain error is error that is "obvious," "substantial," and "grave." *Id.* (citing Crim. P. 30, 52(b)). Plain error is error that seriously affects the substantial rights of the accused and occurs when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.* (citing *Moore v. People,* 925 P.2d 264, 268–69 (Colo.1996)).

The prejudice component of a claim for ineffective assistance of counsel requires a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" for purposes of ineffective assistance of counsel claims is a "probability sufficient to undermine confidence in the outcome" of the proceeding. *Ardolino,* 69 P.3d at 76 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

A determination of whether an error casts serious doubt on the reliability of the judgment of conviction under a plain error standard of review applies essentially the same standard as a determination of whether there is a reasonable probability that counsel's professional incompetence was sufficient to undermine confidence in the outcome of the proceeding. *See People v. Versteeg,* 165 P.3d 760, 765 (Colo.App.2006) (showing required under a plain error standard of review is the same showing of prejudice required to establish a claim of ineffective assistance of counsel).[2]

Thus, where a defendant alleges ineffective assistance of counsel based on allegations of error raised and rejected under a plain error prejudice analysis on direct appeal, the claims of ineffective assistance of counsel must fail. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (ineffective assistance of counsel claim will not succeed if defendant fails to prove either prong of the test).

Because defendant is unable to make an affirmative showing of prejudice as to these claims, we need not consider whether counsel's acts or omissions amounted to constitutionally deficient representation. *See People v. Vieyra,* 169 P.3d 205, 209 (Colo.App.2007) (if defendant fails to make an affirmative demonstration of prejudice, district court may resolve ineffective assistance claim on that basis alone, without considering whether counsel's performance was deficient).

## C. Defendant Did Not Prove Counsel Was Incompetent Regarding the Absence of an Intoxication Instruction

■ In addressing the absence of an intoxication instruction on direct appeal, the *Villarreal* division did not consider plain error prejudice. 131 P.3d at 1125–26. Rather, it concluded that a trial court does not commit plain error by failing to instruct a jury in a manner that is inconsistent with the theory of defense. *Id.* Thus, defendant's postconviction claim of ineffective assistance of counsel for failing to request a jury instruction on intoxication is not in the same posture as her other claims.

Here, the trial court denied this ineffective assistance of counsel claim on the basis that defendant failed to meet the first prong of the *Strickland* test. The court found there

---

2. *See also Gordon v. United States,* 518 F.3d 1291, 1300 (11 th Cir.2008) (noting that the " 'substantial rights' standard of plain error review is identical to the 'prejudice' standard of an ineffective assistance claim"); *Rodriguez Rodriguez v. United States,* 130 F.Supp.2d 313, 319 (D.P.R.2000) (plain error analysis is "virtually the same reasoning required by the *Strickland* prejudice standard"); *State v. Rhodes,* 657 N.W.2d 823, 839 n. 7 (Minn.2003) (noting that it would be "redundant" to address a claim under the plain error standard after no prejudice has been found under the *Strickland* standard); *State v. Dunn,* 850 P.2d 1201, 1225 (Utah 1993) (the prejudice test of *Strickland* is "equivalent to the harmfulness test we apply in determining plain error"); *State v. Ellifritz,* 835 P.2d 170, 174 (Utah Ct.App.1992) ("[f]ailure to meet the plain error requirement of prejudice means that [the] defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard").

was no evidence presented by the expert or in the record to suggest that the absence of the intoxication instruction was the result of a deficiency rather than a "very mainstream, appropriate and tactically positive decision" not to distract the jury with inconsistent defenses.

The criminal defense expert acknowledged at the postconviction hearing that defendant had pursued a defense of misidentification and alibi as a matter of trial strategy. The expert did not disparage that strategic choice and, because voluntary intoxication was inconsistent with the theory of defense, agreed it was correct *not* to argue intoxication to the jury. However, the expert testified that, in his opinion, competent trial counsel would have nonetheless requested a jury instruction on voluntary intoxication because there was "no competent reason not to ask for it." In his opinion, there would be "no harm because the jury doesn't know which side asked for [the intoxication instruction]"; and because the lawyers do not even have to argue the instruction, it does not undercut the chosen theory of defense. He testified that competent attorneys consider all of the instructions regardless of the theory of defense they pursue.

In its findings of fact, the trial court agreed that attorneys should consider all jury instructions regardless of the theory of defense, but found the particular testimony from the expert unhelpful to resolution of the issue. In particular, the court found unpersuasive the expert's testimony that trial counsel should have requested the intoxication instruction even though it was inconsistent with the theory of defense. The court found that the expert's testimony ignored the problem of how to justify, as a "tactical reality," accepting or requesting that various instructions be presented to the jury that "will actually force the jury back in the jury room to picture the defendant at the scene." The trial court continued:

> In [the trial court's] experience, it has been the overwhelming majority of tactical choices in criminal cases over many, many, many years of practice, that defense attorneys studiously avoid allowing and requesting jury instructions that have the

jury picturing their client at the scene, drunk, angry, such as heat of passion, doing a second degree rather than a first degree ... when their defense is she wasn't there.

The court rejected the expert's testimony that "there's no problem in having [inconsistent defenses] in the instructions because no one will ever know who put them" there: such testimony ignored the fact that "no matter who put those arguments in those instructions," when the jury reads the instructions in the jury room, instead of picturing defendant "at home petting the cat," it starts to "focus on the defendant being at the scene assaulting the victim." The court reiterated that, in its experience, "a majority tactical choice ... in these cases ... is not to allow jury instructions that would thus distract and entice the jury to even imagine the defendant in proximity to the victim."

The record supports the court's findings and the legal conclusion drawn from them.

As the trier of fact, the trial court could reject as unpersuasive expert testimony, even if, as here, it was uncontroverted. *See People v. Grant,* 174 P.3d 798, 812 (Colo.App. 2007) (citing proposition, with approval); *see also Kim v. Grover C. Coors Trust,* 179 P.3d 86, 97 (Colo.App.2007)(same).

■ While some trial decisions, such as whether to plead guilty or proceed to trial and whether to testify at trial, implicate inherently personal rights and decisions that must be made by the defendant alone, other matters are considered strategic or tactical decisions that require an attorney's training and skill. *See Arko v. People,* 183 P.3d 555, 558 (Colo.2008); *Steward v. People,* 179 Colo. 31, 34, 498 P.2d 933, 934 (1972) ("Defense counsel stands as captain of the ship in ascertaining what evidence should be offered and what strategy should be employed in the defense of the case."). A request for jury instructions is an area "within the unique competence of defense counsel." *Arko,* 183 P.3d at 559 (quoting *People v. Thompson,* 69 Mich.App. 465, 245 N.W.2d 93, 94 (1976) (finding trial court erred in following defendant's wishes over trial counsel's request to instruct jury on lesser included offense)); *see*

also *People v. Wader*, 5 Cal.4th 610, 20 Cal. Rptr.2d 788, 854 P.2d 80 (1993) (instruction on voluntary intoxication would have been inconsistent with defendant's theory of the case, and court could not say that defense counsel had no rational tactical purpose in not requesting intoxication instruction).

Here, defendant did not meet her burden of proving that the absence of an intoxication instruction was the result of professional incompetence, rather than a strategic decision within the purview of trial counsel. Defendant's disagreement as to that trial strategy will not support a claim of ineffectiveness. *See Davis*, 871 P.2d at 773 (citing *People v. Bossert*, 722 P.2d 998, 1010 (Colo.1986), and *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052 (strategic choices are "virtually unchallengeable")).

The order is affirmed.

Judge ROMÁN and Judge TERRY concur.