22CA0370 Peo v Lopez-Ramirez 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0370 City and County of Denver District Court No. 15CR768 Honorable Ericka F.H. Englert, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Mario Lopez-Ramirez, Defendant-Appellant. ORDER AFFIRMED Division I Opinion by JUDGE GRAHAM* Welling and Hawthorne*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Philip J. Weiser, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Defendant, Mario Lopez-Ramirez, appeals the postconviction court’s order denying his Crim. P. 35(c) motion for postconviction relief after a hearing. We affirm. I. Background ¶ 2 The People charged defendant with attempted first degree murder and two counts of first degree assault based on an altercation that occurred in 2015. His mother had retained Michael Uwate as his private counsel and, through Uwate, defendant entered a plea of not guilty. ¶ 3 The trial court initially set trial for November 2015, but defendant could not attend because of an injury. The court reset trial for April 2016 and later reset trial for June 2016 because of its own scheduling conflict. ¶ 4 On June 6, 2016, the day of trial, defendant told the court that he wanted a public defender appointed to represent him. He explained that this was a “recent decision,” and Uwate confirmed that he had learned of it that morning. Uwate explained that he had experienced trouble communicating with defendant, indicating that defendant did not want to talk with him. No mention of communication difficulties had been made at prior court 
2 appearances, and Uwate confirmed that he had met with defendant once while defendant was incarcerated and on several occasions at previous court appearances. It became apparent that defendant was not happy with plea bargain negotiations or his counsel’s performance. The court denied defendant’s request for a public defender because it found that there had not been a conflict of interest or complete breakdown in communication sufficient to constitute good cause to substitute counsel. The court analyzed the factors set forth in People v. Brown, 2014 CO 25, 322 P.3d 214, to determine if cause existed to justify a continuance and determined that a continuance was not appropriate. The court asked: “Do you wish to enter a plea bargain, or do I bring the jury up?” Defendant — still represented by Uwate — then pleaded guilty to one count of first degree assault with a sentencing range of sixteen to twenty-two years in prison. ¶ 5 Defendant later filed pro se motions to withdraw his guilty plea and appoint substitute counsel. The court declined to rule on the motions, reasoning that defendant was still represented by counsel. ¶ 6 On September 9, 2016, the day of sentencing, defendant appeared again with Uwate. Uwate told the court that defendant 
3 wanted to fire him, and defendant confirmed that he had fired Uwate on August 1, 2016. The court then excused Uwate from the case and sentenced defendant to a term of twenty-two years in the custody of the Department of Corrections. ¶ 7 Three years later, defendant — with newly obtained private counsel — filed a timely Rule 35(c) motion for postconviction relief. He argued that there had been a complete breakdown in communication between himself and Uwate while Uwate represented him. After holding an evidentiary hearing, the postconviction court denied the motion, reasoning that “[t]he problems between Lopez-Ramirez and his attorney did not rise to the level of a complete breakdown in communication.” II. Discussion ¶ 8 Defendant contends that the postconviction court erred by denying his Rule 35(c) motion because the trial court had violated his Sixth Amendment right to the assistance of counsel on three occasions: (1) at the plea stage; (2) during the plea withdrawal proceedings; and (3) at the sentencing stage. We reject his contention. 
4 A. Standard of Review ¶ 9 In reviewing the denial of a Rule 35(c) motion following an evidentiary hearing, we defer to the postconviction court’s factual findings if the record supports them. Dunlap v. People, 173 P.3d 1054, 1063 (Colo. 2007). We review the postconviction court’s legal conclusions de novo. Id. B. Applicable Law ¶ 10 The Sixth Amendment to the United States Constitution guarantees a defendant “the right . . . to have the Assistance of Counsel for his defen[s]e.” U.S. Const. amend. VI, XIV; see also Colo. Const. art. II, § 16. This right includes a defendant’s ability to have the counsel of his choosing and the right to fire counsel that he previously retained. Ronquillo v. People, 2017 CO 99, ¶ 27, 404 P.3d 264, 270 (“A defendant who wishes to discharge retained counsel may do so without good cause, even if he seeks to replace retained counsel with appointed counsel.”). ¶ 11 Upon learning that a defendant seeks to fire retained counsel, the trial court should find out how the defendant wishes to proceed and determine if there are any procedural impediments to proceeding according to the defendant’s wishes. Id. at ¶ 41, 404 
5 P.3d at 272. If the defendant asks to proceed without counsel and waives his right to counsel under People v. Arguello, 772 P.2d 87 (Colo. 1989), “the court should release retained counsel and allow the defendant to represent himself.” Ronquillo, ¶ 38, 404 P.3d at 271. If the defendant asks for replacement counsel, he must show good cause, such as a conflict of interest or complete breakdown in communication, to warrant a substitution of counsel. Arguello, 772 P.2d at 94; see People v. Bergerud, 223 P.3d 686, 694 (Colo. 2010) (“Before a substitution of counsel is warranted, the court must establish that the defendant has ‘some well founded reason for believing that the appointed attorney cannot or will not completely represent him.’” (quoting Arguello, 772 P.2d at 94)). The court should also determine “whether the defendant is entitled to a continuance under the test . . . set out in Brown, ¶¶ 24-25, 322 P.3d at 220-21,” to allow him enough time for replacement counsel to take over the case. Ronquillo, ¶ 35, 404 P.3d at 270. ¶ 12 “[I]f the defendant is not entitled to a continuance under Brown, the trial court must require the defendant to choose between keeping retained counsel or waiving the right to counsel 
6 and proceeding pro se.” People v. Gilbert, 2022 CO 23, ¶ 22, 510 P.3d 538, 545. C. Analysis 1. Right to Counsel at the Plea Stage ¶ 13 Defendant first contends that the trial court violated his right to counsel when he pleaded guilty. We disagree. ¶ 14 He maintains that there was a complete breakdown in communication between himself and Uwate. If there was, the court should have appointed substitute counsel to represent him; if there was not, the court did not err by requiring him to proceed either pro se or with Uwate. See Arguello, 772 P.2d at 94; Bergerud, 223 P.3d at 693. ¶ 15 We conclude that the postconviction court did not err by finding that there was not a complete breakdown in defendant’s communication with Uwate. At the evidentiary hearing on his Rule 35(c) motion, defendant explained that he wanted new counsel — not because there had been a breakdown in communication — but because he had hoped that a new lawyer would get him a better deal. “Disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of 
7 counsel.” People v. Kelling, 151 P.3d 650, 653 (Colo. App. 2006); see also Bergerud, 223 P.3d at 693 (“On issues of trial strategy, defense counsel is ‘captain of the ship.’” (quoting Arko v. People, 183 P.3d 555, 558 (Colo. 2008))). ¶ 16 To be sure, Uwate told the court that he and defendant had “communication issues.” Mere communication issues, however, do not amount to a complete breakdown in communication. People v. Johnson, 2016 COA 15, ¶ 32, 381 P.3d 348, 355. Rather, “[t]he type of ‘total breakdown’ in communication which would warrant substitution of counsel must be evidenced by proof ‘of a severe and pervasive conflict with [the defendant’s] attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible.’” People v. Faussett, 2016 COA 94M, ¶ 24, 409 P.3d 477, 483 (quoting United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002)) (alteration in original). ¶ 17 In this case, meaningful communication between defendant and Uwate was not only possible; it occurred. Uwate visited defendant in jail at least once and met with him eight times on various court dates. At the evidentiary hearing, Uwate testified that he and defendant “had always been — I don’t want to say ‘friendly,’ 
8 but civil and . . . cordial, and we’ve always had — we were always communicating. We were talking right up until the last time I talked to him in lockup before [June 6, 2016].” Uwate also testified that he and defendant had discussed trial procedures, potential defenses, and the strength of the prosecution’s evidence and that he was prepared to go to trial on June 6. See People v. Jenkins, 83 P.3d 1122, 1126 (Colo. App. 2003) (no breakdown in communication where defense counsel met with the defendant only once in nine months, had not discussed potential witnesses with him, and had not given him copies of discovery materials); cf. Lott, 310 F.3d at 1249 (the defendant sufficiently alleged a breakdown in communication because defense counsel had never interviewed him before trial, and the defendant had been entirely unable to contact counsel). ¶ 18 Further, the record shows that defendant was able to speak more frequently with his attorney but chose not to. For example, defendant testified that he had used his mother’s phone to call his family while he was on bond. When asked why he did not also call Uwate, defendant answered, “I didn’t want to talk to Uwate about my case.” See United States v. Holloway, 939 F.3d 1088, 1102 
9 (10th Cir. 2019) (no complete breakdown in communication where the defendant substantially and unjustifiably contributed to the breakdown by choosing not to communicate with his attorney). ¶ 19 The postconviction court, having found with record support that no complete breakdown in communication occurred, ruled that defendant failed to establish good cause warranting a substitution of counsel. Consequently, the court had no duty to appoint new counsel to represent him. And because the court found he was not entitled to a continuance under Brown, it did not err by requiring him to proceed either pro se or with Uwate.
1 See Gilbert, ¶ 22, 510 P.3d at 545. ¶ 20 Defendant appears to argue that even without good cause to appoint substitute counsel, the court should have granted a continuance to allow him to obtain new counsel. He asserts that the court’s Brown analysis was “fatally flawed.” We need not 1 Defendant asserts that the court prohibited him from firing Uwate on June 6 “based on the misapprehension that it could not do so unless there was . . . good cause to fire Uwate.” We reject his assertion. The trial court never told defendant that he could not fire Uwate. Rather, the court warned him that he would have to proceed pro se if he fired Uwate because he was not entitled to a continuance to obtain new counsel. 
10 address this contention, however, because defendant did not preserve it. See People v. Goldman, 923 P.2d 374, 375 (Colo. App. 1996) (“Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.”). 2. Right to Counsel During the Plea Withdrawal Proceedings ¶ 21 Defendant next contends that the trial court violated his right to counsel during the plea withdrawal proceedings. Because he did not raise this argument in his Rule 35(c) motion, we will not address it. See id. 3. Right to Counsel at the Sentencing Stage ¶ 22 Defendant next contends that the trial court violated his right to counsel at sentencing. Again, we disagree. ¶ 23 As noted, upon learning that a defendant seeks to fire retained counsel, the court should determine how the defendant wishes to proceed and whether there are any procedural impediments to proceeding. Ronquillo, ¶ 41, 404 P.3d at 272. If the defendant wants to proceed pro se and waives his right to counsel, “the court should release retained counsel and allow the defendant to represent himself.” Id. at ¶ 38, 404 P.3d at 271. 
11 ¶ 24 In this case, the trial court did exactly that. At the sentencing hearing, defendant told the court that he had fired Uwate on August 1, 2016. After Uwate confirmed that he had been fired, the court discharged him. It then asked defendant whether he wanted to represent himself for sentencing, to which defendant responded, “[Y]es.” He told the court, “I fired my lawyer August 1st, ma’am. I never mixed — I never asked for hybrid or mixed counsel. I want to go pro se, that’s the thing.” We perceive no error in the postconviction court rejecting defendant’s claim in this regard. See id.; see also Arguello, 772 P.2d at 92 (“As a corollary to the Sixth Amendment’s right to counsel, a defendant has the alternative right to self-representation.”). ¶ 25 Defendant nevertheless argues that his waiver of the right to counsel at sentencing was invalid because the court did not ensure that he had “an understanding of the matter and risks of self-
representation.” See Arguello, 772 P.2d at 94 (“[E]ven if the choice to proceed pro se is ‘voluntary,’ the waiver is not valid until the court ensures that the waiver is made knowingly and intelligently.”). But he did not raise this argument in his Rule 35(c) motion. Therefore, we decline to address it here. See People v. Osorio, 170 
12 P.3d 796, 801 (Colo. App. 2007) (“Because defendant did not raise this particular issue in his Crim. P. 35(c) motion, we decline to consider it.”). III. Disposition ¶ 26 The order is affirmed. JUDGE WELLING and JUDGE HAWTHORNE concur.